UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Rickie G. Smith,                                      Case No. 3:23-cv-1573

             Plaintiff,

     v.                                              MEMORANDUM OPINION
                                                   AND ORDER

Celanese International Corporation, et. al.,

             Defendants.

## I. INTRODUCTION

Plaintiff Rickie G. Smith filed a motion to remand this case to the Marion County Court of Common Pleas and a motion seeking fees and costs associated with the removal of this case. (Doc. No. 16; Doc. No. 17 at 9-10). Defendants Celanese International Corporation and JM Swank, LLC filed a brief in opposition. (Doc. No. 25). In addition, Defendant Givaudan Flavors Corporation filed a response to Smith's motion to remand opposing the motion and also moving to be dismissed from the case. (Doc. No. 22). Smith filed a reply. (Doc. No. 26). Givaudan Corp. then filed a motion for leave to file a sur-reply. (Doc. No. 29). Smith opposed that motion. (Doc. No. 30).

Separately, Celanese Corp. filed a motion to dismiss for failure to state a claim and for lack of personal jurisdiction. (Doc. No. 6). Smith filed a motion for an extension of time to reply to Celanese Corp.'s motion to dismiss. (Doc. No. 19). Celanese Corp. opposed this motion. (Doc. No. 20). Smith filed a reply. (Doc. No. 21).

The other remaining named defendant in this case, Symrise, Inc., has not joined or opposed any motion.

## II. BACKGROUND

In this removal action from the Marion County Court of Common Pleas ("Marion County case"), Plaintiff Rickie G. Smith brings an array of claims related to the death of his wife, Vicky Smith. Vicky worked at the ConAgra plant near Marion, Ohio ("Marion ConAgra plant"), allegedly from 2010 to 2012. (Doc. No. 1-5 at 9). The Marion ConAgra plant manufactured snack foods. While Vicky worked there, Rickie contends, she was exposed to "toxic flavorings" used by ConAgra to make its products, including "diacetyl, 2, 3, pentanedione, 2,3-hexanedione, 3,4-hexanedione, 2,3-heptanedione, acetoin, starter distillate and other flavoring chemicals." (*Id.*). Rickie asserts this exposure caused Vicky to develop lung disease, from which she died on June 14, 2021. (*See id.* at 9-10).

Targeting the alleged suppliers and manufacturers of these "toxic flavorings," Rickie sued the following defendants on June 13, 2023: Celanese Corp., CHR Hansen, Inc., Givaudan Corp., JM Swank, Symrise, Inc., and twenty John Doe business entities.[1] (Doc. No. 1-5 at 4-6). Smith is a citizen of Ohio, as is Givaudan Corp. (*See id.* at 4-5; Doc. No. 1-6 at 3). The other named defendants are not Ohio citizens. Smith brought eight causes of action under the Ohio Revised Code and Ohio common law against all defendants: (1) strict products liability – design defect under § 2307.75, (2) strict products liability – inadequate warning or instruction under § 2307.76, (3) strict products liability – failure to conform to representations under § 2307.77, (4) supplier negligence under § 2307.78, (5) wrongful death under § 2125.01, (6) loss of consortium, (7) a survivor action under § 2305.21, and (8) punitive damages. (Doc. No. 1-5 at 11-20).

The Marion County case is not the first action brought in Ohio based on these underlying facts. On June 18, 2018, Vicky and Rickie brought an action in the Hamilton County Court of Common Pleas ("Hamilton County case") against 17 named defendants and 20 John Does for

---

[1] Smith voluntarily dismissed CHR Hansen, Inc. from this action before the case was removed from the Marion County Court of Common Pleas. (*See* Doc. No. 1-9).

allegedly causing Vicky to be exposed to "toxic flavorings," including diacetyl and 2, 3, pentanedione, during her time working at the Marion ConAgra plant. (*See* Doc. No. 1-2 at 1-5, 8-10) (Hamilton County case amended complaint); *see generally Smith v. Berje, Inc.*, No. A 1803036 (Hamilton Cnty. C.P.). Givaudan Corp., Symrise Inc., and CHR Hansen, Inc. were also defendants in the Hamilton County case. (*See id.*). Celanese Corp. and JM Swank were not sued in the Hamilton County case. (*See id.*).

In the Hamilton County case, as in the present case, the Smiths brought three distinct strict products liability claims, a supplier negligence claim, a loss of consortium claim, and a punitive damages claim. (*Compare* Doc. No. 1-2 at 10-18 *with* Doc. No. 1-5 at 11-20). The filing of the Hamilton County case preceded Vicky's death and thus did not include a wrongful death claim or a survivorship claim. (*See* Doc. No. 1-2 at 8-10). On June 13, 2023, the same day he filed the Marion County case, Rickie filed a notice of voluntary dismissal of all claims against all parties in the Hamilton County case. *See* Plaintiffs' Notice of Voluntary Dismissal of All Counts and Claims Against All Defendants, *Smith v. Berje, Inc.*, No. A 1803036 (Hamilton Cnty. C.P. June 13, 2023).

On July 18, 2023, Givaudan Corp. filed an answer in the Marion County case in which it raised, as an affirmative defense, the putative pending status of the Hamilton County case.[2] (*See* Doc. No. 1-6 at 15-16); Givaudan Flavors Corporation's Answer to Plaintiff's Complaint, *Smith v. Celanese Int'l Corp.*, No. 2023-cv-0266 (Marion Cnty C.P. July 18, 2023). Celanese Corp. removed the

---

[2] A notice of removal must be filed within 30 days of the defendant's receipt of the initial pleading or "within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(1),(b)(3). Celanese Corp. asserts in its notice of removal that "Givaudan's Answer, filed on July 18, 2023, constitutes an 'other paper' which made it ascertainable that the case was removable" because that document first informed Celanese Corp. of the existence of facts which purportedly make Givaudan Corp. improperly joined. (Doc. No. 1 at 12). Smith does not challenge the assertion that Celanese Corp. first learned of these supposed facts from Givaudan Corp.'s answer in the Marion County case. Celanese Corp. removed this case within 30 days of its receipt of Givaudan Corp.'s answer in the Marion County case. (*See* Doc. No. 1).

3

case to this court on August 11, 2023. (*See* Doc. No. 1). Acknowledging that Givaudan Corp. is "a corporation . . . having its principal place of business in Ohio," Celanese Corp. asserted Givaudan Corp.'s presence in this case "does not defeat complete diversity of citizenship" because Givaudan Corp. was "improperly joined." (Doc. No. 1 at 5-6).

On October 19, 2023, a notice was docketed in the Hamilton County case indicating all costs related to the notice of voluntary dismissal had been paid. *See* Plaintiffs' Notice of Voluntary Dismissal of All Counts and Claims Against All Defendants, *Smith v. Berje, Inc.*, No. A 1803036 (Hamilton Cnty. C.P. Oct. 19, 2023).

### III. STANDARD

In general, a defendant in an action brought in state court may remove the case to federal court if "the district courts of the United States have original jurisdiction" over that action. 28 U.S.C. § 1441(a). "In order for a defendant to remove a case to federal court based upon diversity jurisdiction, there must be complete diversity of citizenship both at the time that the case is commenced and at the time that the notice of removal is filed." *Jerome–Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999). Conversely, "[a] district court lacks subject matter jurisdiction in a diversity action where the parties are not completely diverse." *Saginaw Housing Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009) (citing *Jerome–Duncan*, 176 F.3d at 907). If a federal district court lacks subject matter jurisdiction over a removed case, "the case shall be remanded" to the state court from which it was removed. 28 U.S.C. § 1447(c); *see Saginaw Housing Comm'n*, 576 F.3d at 624.

### IV. ANALYSIS

### A. Motion to Remand

Smith asserts, and Celanese Corp. and JM Swank agree, that Givaudan Corp.'s Ohio citizenship, if taken into account, would destroy complete diversity and deprive the court of subject matter jurisdiction. (*See* Doc. No. 17 at 7; Doc. No. 25 at 12; *see also* Doc. No. 1-6 at 3 (Givaudan Corp. answer) (admitting, in the Marion County case, that Givaudan Corp. "has its principal place of business in Ohio")).[3] In an attempt to avoid this result, Defendants rely on a "judicially-created . . . exception to the requirement of complete diversity" known as fraudulent joinder. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (citations and internal quotation marks omitted); (*see* Doc. No. 25 at 6-7; Doc. No. 22 at 8).

Absent another basis for subject matter jurisdiction, a defendant in a case with incomplete diversity "may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012) (quoting *Jerome-Duncan*, 176 F.3d at 907) (internal quotation marks omitted). "A defendant is fraudulently joined if it is 'clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law.'" *Casias,* 695 F.3d at 432-33 (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)).

In making this determination, courts "apply a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias,* 695 F.3d at 433 (citing *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 952–54 (6th Cir. 2011)). This means I must "resolve all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non-removing party." *Coyne*, 183 F.3d at 49 (quoting *Alexander*, 13 F.3d at 949).

---

[3] Smith also argues I must remand this case because "Celanese failed to demonstrate that it has the unanimous consent of all remaining defendants." (Doc. No. 17 at 11) (citing 28 U.S.C. § 1446(b)(2)(A)). Because I conclude Givaudan Corp.'s Ohio citizenship deprives the court of subject matter jurisdiction in this case, I do not reach this argument.

5

When appropriate, a court may "pierce the pleading" and consider evidence beyond the pleadings, but only "for the limited purpose of determining whether there are 'undisputed facts that negate the claim.'" *Casias*, 695 F.3d at 433 (quoting *Walker*, 443 F. App'x at 955–56). The ultimate inquiry is "whether there is 'a colorable basis for predicting that a plaintiff may recover against [a defendant].'" *Casias*, 695 F.3d at 433 (quoting *Coyne*, 183 F.3d at 493). The removing party, who bears the burden of establishing the propriety of removal, likewise bears the burden of showing that a defendant was fraudulently joined. *Casias*, 695 F.3d at 433; *see also Kent State Univ. Bd. of Trustees v. Lexington Ins. Co.*, 512 F. App'x 485, 489 (6th Cir. Jan. 22, 2013) (table decision) ("The combination of the 'colorable' standard with the requirement that all ambiguities of state law are to be resolved in favor of the non-removing party presents a significant hurdle.").

Defendants offer arguments for why each of the eight claims against Givaudan Corp. is not colorable. (*See* Doc. No. 25 at 12-20; Doc. No. 22 at 6). But because they have failed to demonstrate that Smith's wrongful death claim against Givaudan Corp. is not colorable, I need not reach their arguments on Smith's other claims before concluding Givaudan Corp. was not fraudulently joined in this litigation.

1. **Compulsory Joinder in the Hamilton County Case**

Celanese Corp. and JM Swank first argue Smith's wrongful death claim is not colorable because he was required to bring his wrongful death claim against Givaudan Corp. in the Hamilton County case. (Doc. No. 25 at 15). Citing Ohio's compulsory joinder rule, they urge, "if there is a pending personal injury and survival action involving a decedent, a plaintiff must join a wrongful death claim to that pending action after a decedent's death.[] It cannot be brought as a separate action." (*Id.*) (citing Ohio Civ. R. 19.1(A)(1)). This argument is predicated on the assertion that the Hamilton County case "is in fact ongoing and has not been dismissed," or at least that the Hamilton County case was ongoing at the time this case was removed to federal court. (*Id.* at 13).

6

In response, Smith argues, "[p]laintiffs' counsel dismissed the original Vicky Smith personal injury case on June 13, 2023," prior to the date the Marion County case was removed to federal court. (Doc. No. 26 at 6). In short, Defendants' first argument turns on whether, and when, the Hamilton County case was dismissed.

Ohio Civil Rule 41(A)(1)(a) generally provides that "a plaintiff, without order of court, may dismiss all claims asserted by that plaintiff against a defendant by . . . filing a notice of dismissal at any time before the commencement of trial unless a counterclaim which cannot remain pending for independent adjudication by the court has been served by that defendant." Ohio Civ. R. 41(A)(1)(a). A voluntary dismissal under Ohio Civil Rule 41(A)(1) is effective on "the date on which [the] plaintiff[] filed [his] voluntary dismissal of the action." *Gardner v. Gleydura*, 648 N.E.2d 537, 539 (Ohio Ct. App. 1994).

Smith submitted a notice of voluntary dismissal of all claims against all parties through the Hamilton County Court of Common Pleas electronic filing system on June 13, 2023. (*See* Doc. No. 17-1). Celanese Corp. points to two affidavits and a certified copy of the docket from September 29, 2023. (*See* Doc. Nos. 25-1, 25-2, and 25-8). These documents indicate that the Hamilton County case docket did not reflect the filing of a notice of voluntary dismissal at the time Defendants filed their brief opposing remand, on October 10, 2023. (*See* Doc. No. 25).

In contrast to the evidence presented by Celanese Corp., a review of the docket for the Hamilton County case at the time of writing reveals that a notice of voluntary dismissal of all claims against all defendants was docketed on June 13, 2023.[4] Plaintiffs' Notice of Voluntary Dismissal of All Counts and Claims Against All Defendants, *Smith v. Berje, Inc.*, No. A 1803036 (Hamilton Cnty. C.P. June 13, 2023). This document contains a statement in the bottom left corner reading, "E-

---

[4] I may take "judicial notice of developments in related proceedings in other courts of record." *Chase Bank USA, NA v. City of Cleveland*, 695 F.3d 548, 553 n.2 (6th Cir. 2012) (internal citations and quotation marks omitted).

7

FILED 06/13/2023 2:30 PM," along with a confirmation number. *Id.* In addition, on October 19, 2023, the court docketed a photocopy of that notice of voluntary dismissal containing two stamps, one reading "2023 Oct 19 A 11:23 FILED" and the other reading "Costs Paid Oct 19 2023." Plaintiffs' Notice of Voluntary Dismissal of All Counts and Claims Against All Defendants, *Smith v. Berje, Inc.*, No. A 1803036 (Hamilton Cnty. C.P. Oct. 19, 2023). [5]

It appears from the documents produced by the parties and from my review of the online docket for the Hamilton County case that the following may likely have occurred: First, Smith filed a notice of voluntary dismissal on June 13, 2023, but that notice was not initially docketed because of outstanding costs. Then, on October 19, 2023, once those costs were paid, the Hamilton County Clerk of Courts appears to have docketed the notice of voluntary dismissal *nunc pro tunc* on June 13, 2023, to reflect the date it was initially submitted. This would explain why the June 13, 2023 notice of voluntary dismissal contains an electronic file stamp with the date and time of filing as well as a confirmation number, as dictated by the Hamilton County Court of Common Pleas Local Rules. *See* Hamilton Cnty. C.P. Local R. 34(B).[6] It would also explain why a copy of the notice of voluntary dismissal was docketed on October 19, 2023 with a stamp reading "costs paid." Notably, this date is 9 days *after* Defendants filed their brief opposing remand.

Celanese Corp. argues even if Smith attempted to file a notice of voluntary dismissal on June 13, 2023, that case was not actually dismissed by the time this case was removed, meaning Smith should have filed his wrongful death claim in the Hamilton County case, not this one. (*See* Doc. No.

---

[5] The Hamilton County case had not yet proceeded to trial, and there do not appear to have been any counterclaims. *See generally Smith v. Berje, Inc.*, No. A 1803036 (Hamilton Cnty. C.P.).

[6] "Upon successful completion of acceptance processing by the Clerk of Courts," an electronically-filed document "will be electronically file stamped . . . [with] the date and time that the Clerk of Courts received the entire transmission as well as the confirmation number of the filing." Hamilton Cnty. C.P. Local R. 34(B)(10). "A document electronically filed that is not successfully processed by the Clerk of Courts will not receive an electronically filed stamp but the filer will receive a rejection email." *Id.* There is no dispute that the notice of dismissal has a June 13, 2023 date and time stamp as well as a confirmation number or that Smith did not receive a rejection email.

8

25 at 15). This argument depends on Smith having filed his notice of voluntary dismissal while court costs remained unpaid. It also depends on the discrepancy I noted above between the appearance of the online docket at the time Defendants filed their motion opposing remand (before Smith paid his court costs) and the appearance of the online docket today (after Smith paid his court costs).

Celanese Corp. quotes guidance on the Hamilton County Clerk of Court's website stating, "[a] **Notice of Dismissal** can be efiled **ONLY if** the costs are paid out already or there is a credit on the case." (*See id.* at 12 n.30) (citing Hamilton County Clerk of Courts, *Helpful Hints* at 10 (https://www.courtclerk.org/forms/allhow-tos4users.pdf) (last visited March 11, 2024 3:57 pm) (emphasis in original). And Celanese Corp. points out that Hamilton County Local Rule 34(B)(12) "explicitly states that a filing is not effectuated until the 'Clerk's office file-stamps a document and dockets it in a case.'" (Doc. No. 25 at 12) (citing Hamilton Cnty. C.P. Local R. 34(B)(12)).

Celanese Corp. also cites two Ohio Court of Appeals cases that discuss the effect of failing to comply with a court's local rules regarding a notice of dismissal. (*See id.* at 12 n.33) (citing *Rodriguez v. Wagonlander*, No. L-97-1209, 1998 WL 161185, at *2 (Ohio Ct. App. Mar. 31, 1998) and *Brenman v. Reck*, No. 2004 CA 3, 2004 WL 2453352 at *2 (Ohio Ct. App. Oct. 29, 2004)).

In part, Defendants' arguments are unavailing because of docketing practices in the Hamilton County Court of Common Pleas beyond Defendants' control. At the time Celanese Corp. and JM Swank filed their brief, Smith's notice of voluntary dismissal may have been absent from the Hamilton County case docket. But today, that online docket shows Smith's notice of voluntary dismissal was docketed on June 13, 2023. *See* Plaintiffs' Notice of Voluntary Dismissal of All Counts and Claims Against All Defendants, *Smith v. Berje, Inc.*, No. A 1803036 (Hamilton Cnty. C.P. June 13, 2023). And the parties do not dispute that Smith submitted a notice of voluntary dismissal

9

through the Hamilton County Court of Common Pleas electronic filing system on June 13, 2023. (*See* Doc. No. 25 at 13-14; Doc. No. 17 at 4) (both citing Doc. No. 17-1).

Moreover, Celanese Corp.'s cited cases provide little guidance here. *Rodriguez* did not involve the failure to pay costs. *Rodriguez*, 1998 WL 161185 at *1. And *Brenman* has nothing to say about the date on which a notice of voluntary dismissal is considered filed when the plaintiff initially fails to pay court costs but later does so. *Brenman*, 2004 WL 2453352 at *2. Further, neither involves the local rules for the Hamilton County Court of Common Pleas. *See id.*

None of the law or evidence Defendants cite demonstrates that the filing date of the June 13, 2023 notice of voluntary dismissal is not June 13, 2023. At most, Defendants have raised, but not answered, the following question: in Hamilton County Court of Common Pleas, when a party's notice of dismissal is docketed on one date but costs are paid on another date, on what date is the notice of voluntary dismissal considered "filed"? For the purposes of fraudulent joinder, the existence of an unresolved legal and factual issue like this one is enough to reject Defendants' argument because I must "resolve all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non-removing party." *Coyne*, 183 F.3d at 493 (quoting *Alexander*, 13 F.3d at 949). So, for purposes of this motion, Smith "fil[ed] a notice of dismissal" under Ohio Civil Rule 41(A)(1)(a) on June 13, 2023, meaning the case was dismissed on that date as well. Ohio Civ. R. 41(A)(1)(a); *see Gardner*, 648 N.E.2d at 539.

Therefore, on August 11, 2023, the date Celanese Corp. removed to federal court, only one extant action—this one—brought claims related to the injuries Vicky Smith allegedly suffered as a result of her work at the Marion ConAgra plant. (*See* Doc. No. 1). Defendants have not carried their burden to show a duplicative action existed "at the time that the notice of removal [was] filed" that could have triggered Ohio's compulsory joinder rule for Smith's wrongful death claim. *Jerome-Duncan, Inc.*, 176 F.3d at 907; *see Freudeman v. Landing of Canton*, 702 F.3d 318, 333 n.6 (6th Cir. 2012)

10

(noting that "Ohio's compulsory joinder rule mandates that a survival claim and a wrongful death claim be joined in the same action" absent good cause shown). I reject Defendants' argument that the purported pendency of the Hamilton County case renders Smith's wrongful death claim against Givaudan Corp. not colorable.

### 2. Causation

Defendants also assert they properly removed this litigation because "[d]ecedent could not have been exposed to any Givaudan product" as a factual matter, which if true, would make it impossible for Smith to prove the causation element of her wrongful death claim. (Doc. No. 25 at 6; Doc. No. 22 at 6-8); *see Frost v. Evenflo Co., Inc.*, No. 2022-CA-29, 2023 WL 8670063 at *7 (Ohio Ct. App. Dec. 15, 2023) (finding, in a case with a wrongful death claim and products liability claims, that the plaintiff's failure to prove causation vitiated both claims). In support, Defendants—primarily Givaudan Corp.—summon nearly 200 pages of documentary evidence, some of which appears to have been produced in the Hamilton County case. (*See* Doc. Nos. 22-1 through 22-14). Smith responds by marshaling summary judgment-type evidence of his own. (*See* Doc. No. 17 at 3; Doc. No. 26 at 5-9).

But my limited inquiry beyond the pleadings may not determine "whether [the] Plaintiff[] had adequate evidentiary support for [his] claim." *Walker*, 443 F. App'x at 956. Instead, I may only consider "undisputed facts that negate the claim." *Id.* When viewing the evidence in this light, the most Defendants have proven is the existence of vigorously-contested disputes of fact bearing on the causation question. Of particular importance, Smith points to an interrogatory Givaudan Corp. produced on February 14, 2019, stating "Givaudan shipped a limited number and amount of flavors containing diacetyl to the ConAgra Plant in Marion during the time period of Plaintiff [Vicky Smith's] alleged employment." (Doc. No. 26 at 8) (quoting Doc. No. 17-2 at 8) (alterations in

11

original). This set of interrogatories was signed by Doug West, the Vice President of Flavor Creation and Application for Givaudan Corp. (*See* Doc. No. 17-2 at 44; Doc. No. 22-12 at 2).

In response, Givaudan Corp. asserts its own interrogatory "contained a mistake" and further contends it "did not supply any products to the ConAgra Marion plant during the time that Decedent worked there between 2013 and 2014." (Doc. No. 22 at 3, 5). Givaudan Corp. attempts to support this assertion with a number of documents, including two subsequent affidavits from West that contradict his previous under-oath interrogatory response (one of which was apparently prepared just two days before Givaudan Corp. filed its brief); portions of the decedent's testimony indicating she worked at the ConAgra plant from 2013-2014 rather than from 2010-2012; and extensive correspondence between counsel in this case. (*See* Doc. No. 22 at 2-5, 6-8).

Smith, in turn, responds by citing a letter from Givaudan Corp.'s counsel and quoting ConAgra's deposition testimony referencing "the ingredients Givaudan used in the new butter flavorings it supplied to the Marion plant from 2008 to 2014" to dispute Defendants' contention that Givaudan Corp. did not ship any flavors to the Marion ConAgra plant while Vicky Smith worked there. (Doc. No. 26 at 5) (quoting Doc. No. 26-3 at 8).

At most, Defendants have demonstrated that these key factual questions are disputed.[7] Both sides offer documentary evidence contesting whether Givaudan Corp. shipped flavorings containing allegedly toxic chemicals to the Marion ConAgra plant, and both sides likewise offer documentary evidence contesting the timing of Givaudan Corp.'s shipments to the Marion ConAgra

---

[7] Smith's counsel, and counsel for Givaudan Corp., each accuse the other of dishonest and unethical conduct in their briefing. Smith asserts, "Defendants . . . withheld critical evidence from this court" and further accuses the Defendants of providing "outright falsehoods . . . to this Court" and leveling "unethical threats against Plaintiff's counsel." (Doc. No. 26 at 10, 11). For its part, Givaudan Corp. cites Rule 11 and asserts, "it is Plaintiff who made false representations to the Court—not Givaudan." (Doc. No. 22 at 9-10) (citing Fed. R. Civ. P. 11(b)). Neither party actually moves for sanctions under Fed. R. Civ. P. 11(c). These inflammatory, ad-hominem remarks are inappropriate and irrelevant.

plant. Because my limited inquiry beyond the pleadings can consider only "undisputed facts that negate the claim," Defendants have failed to carry their burden to show fraudulent joinder. *Walker*, 443 F. App'x at 956.

Finally, Defendants present no reason why Smith would lack a colorable wrongful death claim against Givaudan Corp. other than the compulsory-joinder and causation arguments. As I noted above, the presence of Givaudan Corp. in this case destroys complete diversity. Because I lack subject matter jurisdiction, I "must remand back to" the Marion County Court of Common Pleas. *Saginaw Housing Comm'n*, 576 F.3d at 624 (internal citation omitted).

### B. Motion for Leave to File a Sur-reply

Givaudan Corp. also filed a motion for leave to file a sur-reply. (Doc. No. 29). The proposed brief continues the back-and-forth over the facts surrounding the nature and timing of shipments to the Marion ConAgra plant. Givaudan Corp. principally argues "[a] surreply is necessary to address serious new false accusations against Givaudan and material mischaracterizations of new evidence." (Doc. No. 29-1 at 1).

Neither the Federal Rules of Civil Procedure nor the Local Civil Rules expressly address whether and under what circumstances a sur-reply brief may be appropriate. But "sur-replies . . . are highly disfavored," and whether to permit one is "left to the broad discretion of the trial court." *Carter v. Paschall Truck Lines, Inc.*, 364 F. Supp. 3d 732, 748 (W.D. Ky. 2019) (internal citations and quotation marks omitted). Courts often consider whether the party seeking to file the sur-reply brief has shown good cause, such as the need to address a legal issue that was raised for the first time in a reply brief. *See, e.g., Key v. Shelby Cnty.*, 551 F. App'x 262, 264-65 (6th Cir. 2014); *Geiger v. Pfizer, Inc.*, 271 F.R.D. 577, 580-81 (S.D. Ohio 2010).

After reviewing the motion and proposed sur-reply, I conclude the sur-reply merely rehashes the same factual arguments Givaudan Corp. makes in its opposition brief. (*See* Doc. No. 22; Doc.

No. 29-2). Because Givaudan Corp. has not pointed to any "new reasons and evidence" in Smith's reply brief that might require me to give it "an opportunity to respond," I deny the motion for leave to file a sur-reply. *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481-82 (6th Cir. 2003).

### C. Motion for Fees and Costs

In his motion to remand, Smith also asks me to "sanction the Defendants for the fees and costs incurred by Plaintiff in responding to the Notice of Removal." (Doc. No. 17 at 10). Title 28, U.S.C. § 1447(c) authorizes an award of fees and costs when a case is remanded, but "only where the removing party lacked an objectively reasonable basis for seeking removal." *Warthman v. Genoa Twp. Bd. of Trustees*, 549 F.3d 1055, 1059 (6th Cir. 2008) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (internal quotation marks omitted)); *see* 28 U.S.C. § 1447(c). Such an award "is inappropriate where the defendant's attempt to remove the action was 'fairly supportable,' or where there has not been at least some finding of fault with the defendant's decision to remove." *Id.* at 1059-60 (internal citations omitted). "Absent unusual circumstances . . . when an objectively reasonable basis exists, fees should be denied." *Martin*, 546 U.S. at 141. Further, as the Sixth Circuit has explained, "there is a spectrum" of removal cases in which a party unsuccessfully alleges fraudulent joinder, and "some—but not all—of" these unsuccessful removals "must be considered objectively reasonable." *Kent State Univ. Bd. of Trustees*, 512 F. App'x at 492.

This is one such case. Here, Celanese Corp. did not "lack[] an objectively reasonable basis for seeking removal," even though it was ultimately unsuccessful. *Martin,* 546 U.S. at 141.

In the notice of removal, Celanese Corp. represented it initially believed the Marion County case was not removable because of Givaudan Corp.'s Ohio citizenship. (*See* Doc. No. 1 at 4). Celanese Corp., who was not a party to the Hamilton County case, asserts it was alerted to the possibility Givaudan Corp. was improperly joined only after Givaudan Corp. filed its answer in the

14

Marion County case, which noted the existence of the Hamilton County case as an affirmative defense to liability. (*See* Doc. No. 25-2 at 2; Doc. No. 1-6 at 15).

As I discussed above, Smith's notice of voluntary dismissal did not appear on the docket of the Hamilton County case when Celanese Corp. filed its notice of removal, so it was not unreasonable for Celanese Corp. to conclude the Hamilton County case was ongoing at that time. Therefore, at the time Celanese Corp. filed its notice of removal, it was not unreasonable for Celanese Corp. to rely on its understanding of the status of the Hamilton County case and to argue the claims against Givaudan Corp. were not colorable. *Cf., e.g., Gipe v. Medtronic, Inc.*, 416 F. Supp. 3d 687, 699 (W.D. Ky. 2019) (rejecting a fraudulent joinder argument but declining to impose fees and costs "given the unsettled law and facts"); *Baggett v. Great Southern Wood Preserving, Inc.*, No. 3:14-0471, 2014 WL 12774773 at *2-3 (M.D. Tenn. Oct. 16, 2014) (remanding a case after rejecting a fraudulent joinder argument, but declining to impose fees and costs, where the parties disputed material facts). I deny Smith's request for fees and costs under 28 U.S.C. § 1447(c).

### V. CONCLUSION

For the reasons stated above, I grant Smith's motion to remand. (Doc. No. 16). I deny his motion for fees and costs. (Doc. No. 17 at 9-10). I deny Givaudan Corp.'s motion for leave to file a sur-reply. (Doc. No. 29). Because the court lacks subject matter jurisdiction, I deny as moot Celanese Corp.'s motion to dismiss. (Doc. No. 6). Further, I deny as moot Givaudan Corp.'s motion to dismiss and Smith's motion for an extension of time. (Doc. Nos. 22 and 19). I order that this case be remanded back to the Marion County Court of Common Pleas.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge